**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR380CDP (SPM) |
| | ) | |
| DOUGLAS DRUGER-2, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. 101) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Electronic Surveillance Evidence (Doc. 91) be **DENIED.**

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).Trial in this case has been set before the **Honorable Catherine D. Perry** on **June 26, 2017, at 8:30 a.m.**

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of May, 2017

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR380 CDP (SPM) |
| | ) | |
| DOUGLAS DRUGER-2, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b).

### BACKGROUND AND PROCEDURAL HISTORY

Defendant Douglas Druger is charged in an indictment with one count of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine (Count One) and one count of possession with intent to distribute a mixture or substance containing methamphetamine (Count Seven). Defendant filed motions seeking to suppress (a) evidence obtained by the United States from court authorized electronic surveillance (Doc. 91); (b) physical evidence seized from his residence pursuant to a federal search warrant issued on December 10, 2015 (Doc. 101); and (c) physical evidence seized from his residence pursuant to a state search warrant issued on August 17, 2016 (Doc. 101). The United States has filed responses opposing these motions. *See* Docs. 104 & 105.

On March 15, 2017, the undersigned held an evidentiary hearing on Defendant's pretrial motions. At the hearing, the United States offered the testimony of Missouri State Highway Patrol Officer, Corporal Danny Bickel and DEA Special Agent Ryan Lawyer. Documentary evidence presented by the United States was also offered and received into evidence at the hearing. Defendant did not present any additional witnesses or exhibits at the evidentiary hearing.

At the conclusion of the hearing, defense counsel made an oral motion for time to file a post hearing brief. The undersigned granted that motion and, at counsel's request, ordered a written transcript of the evidentiary hearing to assist in preparing the report and recommendation. (Doc. 117). A transcript of the evidentiary hearing was filed on March 23, 2017. (Doc. 67). Defendant's post-hearing brief was filed on April 6, 2017, with leave of Court. (Doc. 128). The United States filed a post-hearing brief on April 7, 2017 (Doc. 129). Thus, Defendant's motions to suppress are fully briefed and ready for a ruling.

Based upon the evidence adduced at the hearing on the motions to suppress, as well as a review of the transcript of the hearing in this matter, and the briefs of the parties, the undersigned makes the following findings of fact and conclusions of law:

I. **FINDINGS OF FACT**

   A. ___Title III Wire Intercepts On Target Telephone #2 (Robert Reno's Phone)___

The evidence adduced at the evidentiary hearing shows that the United States conducted court ordered electronic surveillance during the investigation of the matters alleged in the indictment. On August 28, 2015, acting on behalf of Special Assistant United States Attorney Edward Dowd, Assistant United States Attorney Stephen R. Casey appeared before United States District Judge Ronnie L. White and made an application for interception of wire communications over telephone number (573) 230-5277, International Mobile Subscriber Identity ("IMSI") 310410505507136 (referred to in the applications, affidavits, and orders as Target Telephone #2). *See* Govt. Exhs. 3, 4 & 5. The application was accompanied by and referenced an affidavit of Ryan Lawyer, a Special Agent of the Drug Enforcement Administration (DEA), which was also signed and sworn to before Judge White on August 28, 2015. *See* Govt. Exh. 4.

Agent Lawyer's affidavit established that he was investigating several individuals, including Defendant Druger, for their alleged involvement in a methamphetamine organization and for violations of various drug trafficking, firearm, money laundering, and other federal laws. The affidavit indicated that Agent Lawyer expected that the communications of the identified individuals, including Druger,

would be intercepted on Target Telephone #2, which was subscribed to and used by Druger's co-defendant, Robert Reno. The communications expected to be intercepted and sought to be intercepted concerned the details of offenses committed by the subjects of the investigation as well as the nature, extent and methods of operation of the narcotic distribution of the target subjects and others yet unknown; the identities and roles of accomplices, aiders and abettors, co-conspirators and participants in their illegal activities; the distribution and transfer of the contraband and money involved in those activities; the existence and location of records pertaining to those activities; the location and sources of resources used to finance the suspects' illegal activities; the location and disposition of proceeds from the suspects' illegal activities and the locations of items used in furtherance of the suspects' illegal activities.

The affidavit sets out that in March 2014, DEA St. Louis conducted two separate controlled purchases of crystal methamphetamine from an individual in Vandalia, Missouri, who was eventually arrested. As a result of that individual's cooperation and the subsequent cooperation of other sources of information, investigators were ultimately able to identify Robert Reno as a significant methamphetamine distributor in the Mexico, Missouri area. Through the use of a variety of investigative techniques – all detailed in the affidavit – including review of police reports and records, analysis of phone toll records, air time summaries, pen register data, Title III intercepts on a different phone (Target Telephone #1), law enforcement surveillance, intelligence, and proactive efforts from cooperating sources of information, cooperating defendants, and confidential sources, investigators concluded that conversations and other communication between the targets identified in the affidavit, including Druger, and others yet unknown would be obtained through the interception of wire and electronic communications over Target Telephone #2.

The affidavit set out in detail the investigative tools and methods used in the investigation to date, including visual surveillance, pen registers, telephone toll records analysis, witness interviews, confidential informants, undercover officers, search warrants and trash pulls, interviews with target

witnesses and use of grand jury proceedings, review of police records, use of electronic surveillance cellular location data, tracking devices and Title III intercepts of Target Telephone #1. *See* Govt. Exh. 4, ¶¶76-114. The affidavit recited in detail how each of the investigative tools had been used in the investigation and why each tool had not been successful or was unlikely to be successful. *Id.* Agent Lawyer's hearing testimony, which was not disputed by defendant, both confirmed and elaborated on the information contained in the affidavit regarding the investigative team's use and consideration of alternative investigative tools.

On August 28, 2015, Judge White signed an Order authorizing the interception of wire communications of Target Telephone #2. *See* Govt. Exh. 5. The Order states that the Court found probable cause to believe that the listed individuals were committing violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846 and 18 U.S.C. §§924(c), 1956 & 1957 and that communications concerning the offenses were likely to be intercepted. The Order further found that normal investigative techniques had been tried and had failed, reasonably appeared to be unlikely to succeed if tried; or were too dangerous to be employed. The order authorized the wiretap interception for thirty (30) days.

On September 25, 2015, Special Assistant United States Attorney, Edward Dowd, appeared before United States District Judge Rodney W. Sippel and made an Application for Continued Interception of Wire Communication over Target Telephone #2. *See* Govt. Exh. 10. The application was again accompanied by and refenced an affidavit of Special Agent Lawyer. *See* Govt. Exh. 11. The affidavit set out information learned by investigators since the first application, including some of the information learned as a result of the first 30 day interception period. The affidavit noted that the information learned during the first interception had been helpful but did not reveal the entire scope of the organization, its activities, and/or its members, including higher level members. *See id.*

On September 25, 2015, Judge Sippel signed an Order Authorizing the Continued Interception of Wire Communications over Target Telephone #2. *See* Govt. Exh. 12. The Order states the Court found probable cause to believe that the listed individuals were committing violations of 21 U.S.C. §§

841(a)(1), 843(b), 846 and 18 U.S.C. §§924(c), 1956 & 1957 and that communications concerning the offenses were likely to be intercepted. The order further found that normal investigative techniques had been tried and had failed; reasonably appeared to be unlikely to succeed if tried; or were too dangerous to be employed. The order authorized the continued wiretap interception for thirty (30) days.

On October 23, 2015, Special Assistant United States Attorney Edward Dowd appeared before United States District Judge Audrey G. Fleissig and made a second Application for Continued Interception of Wire Communication over Target Telephone #2. *See* Govt. Exh. 16. The application was again accompanied by and referenced an affidavit of Special Agent Lawyer. *See* Govt. Exh. 17. The affidavit reiterated and incorporated the information set out in Agent Lawyer's previous affidavits accompanying the first and second applications. The affidavit further set out some of the information learned as a result of the second 30 day interception period. The affidavit noted that the information learned during the first and second interceptions had been helpful but had not revealed the entire scope of the organization, its activities and/or its members. *See id.*

On October 23, 2015, Judge Fleissig signed an Order Authorizing the Continued Interception of Wire Communications over Target Telephone #2. *See* Govt. Exh. 18. The Order states the Court found probable cause to believe that the listed individuals were committing violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846 and 18 U.S.C. §§924(c), 1956 & 1957 and that communications concerning the offenses were likely to be intercepted. The order once again found that normal investigative techniques had been tried and had failed; reasonably appeared to be unlikely to succeed if tried; or were too dangerous to be employed. The order authorized the continued wiretap interception for thirty (30) days.

### *December 10, 2015, Federal Search Warrant*

On December 10, 2015, Agent Lawyer appeared before United States Magistrate Judge Thomas C. Mummert and applied for a search warrant for multiple locations within the Eastern District of Missouri, including Druger's residence at 501 North Western Street, in Mexico, Missouri. *See* Govt. Exh. 2. The search warrant application was accompanied by and referenced an affidavit by Agent

Lawyer. The affidavit indicated that the search warrant application was made in connection with the DEA's ongoing investigation into the Robert Reno drug trafficking organization which, as referenced above, began sometime in March 2014. The affidavit stated that the DEA's long term investigation of the Reno DTO was concluding and explained that the investigation had involved interviews of numerous cooperating individuals, confidential sources, controlled drug purchases, extensive surveillance and Title III intercepts of telephones used by Reno and another member of the DTO.

The affidavit described contacts between Druger and Reno, including the content of communications. Based on Title III intercepts, the communications between Druger and Reno appear to involve the sale and distribution of methamphetamines. The affidavit also described information provided from a confidential source ("CS") indicating that one of the locations targeted in the affidavit (location #2) was a shop utilized by Reno for drug trafficking activities, but registered in Druger's name. *See* Govt. Exh. 2, at ¶60. The affidavit further describes information from a second CS indicating that the CS had been in Druger's residence and, consistent with intercepted communications, the CS had seen methamphetamines and several handguns in Druger's residence. The affidavit also details intercepted communications between Druger and Reno that, coupled with physical surveillance, indicated to investigators that methamphetamine was being stored, weighed, and repackaged (for distribution) at Druger's residence through mid-November 2015. *See id.* at ¶¶76-80.

The search warrant details Agent Lawyer's experience and credentials, which include his participation in over 500 controlled substances investigations involving the use of confidential informants, Title-III intercepts, and the execution of arrest and search warrants. Govt. Ex. 2, at ¶2. The affidavit further outlines the background of the confidential sources referenced in the affidavit. Govt. Exh. 2, at ¶¶8-11 & 17-26. It also describes past criminal activity by the confidential sources and describes how the investigative team corroborated information provided by the confidential sources and why the investigative team believed those sources to be reliable. *See id.* Paragraph 100 (including all subparts) of the affidavit further outlines the documents and other evidence agents expected to find if

authorized to conduct the search; paragraph 100 also explains why, based on the collective experience of the investigative team, they expected to find those items.

On December 10, 2015, Judge Mummert issued a search warrant finding probable cause to search Druger's residence and to seize a number of documents and other objects such as proceeds of illegal drug sales, records of such proceeds, address and telephone numbers of drug trafficking associates, computer equipment, media storage, firearms and ammunition, wire transfer records and receipts, packaging materials, tax forms, drug paraphernalia and so on. *See id.* Agents executed the search warrant on December 17, 2015, seized documents and other items, and submitted a return listing the items seized. *See id.*

### *August 17, 2016, State Search Warrant*

Corporal Danny Bickell is a thirteen-year veteran officer with the Missouri State Highway Patrol. The evidence shows that on August 17, 2016, Corporal Bickell, together with Assistant Audrain County Prosecutor, Scott E. Fox, appeared before Judge Wesley Dalton of Audrain County, Missouri, and applied for a search warrant for Druger's residence at 501 North Western Street, in Mexico, Missouri. *See* Govt. Exh. 1. The search warrant application was accompanied by and referenced an affidavit by Corporal Bickell. *See id.* The affidavit indicated that within the 48 hours leading up to the search warrant application, Corporal Bickell had received information from a documented Missouri State Highway Patrol Confidential Informant ("CI") that Druger was in possession of methamphetamine and a pistol and that the CI had seen these items while at Druger's residence. *Id.* The affidavit describes in detail specific locations within the residence where Druger kept drugs; the duration of the CI's relationship with Druger; Druger's involvement in the sale of methamphetamines to the CI specifically and in and around Mexico, Missouri, generally; and the significant number of times the CI reportedly saw Druger in possession of methamphetamines (i.e., a lot). *Id.* The affidavit further includes a description by the CI of barricades and other measures taken by Druger to hinder entry into the residence by law enforcement. *Id.*

The affidavit refers to the December 2015 federal search warrant obtained by Agent Lawyer, and states that methamphetamines and multiple firearms were seized by law enforcement at the time that federal search warrant was executed. *Id.* Corporal Bickell and Agent Lawyer both acknowledged at the suppression hearing that the federal search warrant return did not list methamphetamines or suspected methamphetamines. However, both officers credibly testified that although methamphetamines were not listed on the federal search warrant return as items seized by law enforcement, trace amounts of methamphetamines were found on items seized during execution of the December 2015 federal warrant. Corporal Bickell further explained that his statement in the affidavit regarding the prior seizure of methamphetamines was not based on his personal knowledge. Rather, he made that statement in reliance on information he received from officers involved in the execution of the federal search warrant in December 2015.

On August 17, 2016, Judge Wesley Dalton found there was probable cause to believe the allegations in the application and affidavit, and issued a warrant authorizing the search of Druger's residence for prohibited drugs. Officers executed the search warrant on the same day and filed a returned listing the items seized during execution of the state search warrant on August 17, 2016. *See* Govt. Exh. 1. Those items included, among other things, suspected methamphetamine, drug paraphernalia, a firearm and ammunition. *See id.*

CONCLUSIONS OF LAW

**I. MOTION TO SUPPRESS EVIDENCE (DOC. 101)**

The Fourth Amendment requires that search warrants be based on probable cause. *United States v. Montes-Medina,* 570 F.3d 1052, 1059 (8th Cir. 2009). Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994); *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "'Probable cause requires only a showing of fair probability, not hard

certainties.'" *United States v. Tripp*, 370 F. App'x. 753, 757 (8th Cir. 2010) (quoting *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008)).

Affidavits for search warrants are reviewed using the "totality-of-the-circumstances" analysis. *Gates*, 462 U.S. at 238. The task of the issuing judge is to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for . . . concluding that probable cause existed." *Id.* at 238-39 (internal quotation marks omitted); *see also Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). When the judge relied solely on the affidavit presented to him or her, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982)). Affidavits must be read in "a commonsense and realistic fashion." *United States v. Caldwell*, 864 F.2d 71, 74 (8th Cir. 1988) (citation omitted). "Deference is accorded an issuing [judge's] probable cause determination . . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978).

### A.  December 17, 2015, Federal Search Warrant

Based on the foregoing factual findings, the undersigned concludes the December 2015 search of Druger's residence and the seizure of documents and other physical evidence associated with drug distribution was lawful because the search warrant affidavit provided a substantial basis on which Judge Mummert could find probable cause for the search and because the good faith exception permitted agents to rely on the warrant even if the warrant was not supported by probable cause.

#### 1.  *The warrant was supported by probable cause.*

The search warrant affidavit details a long-term investigation by the DEA into the Robert Reno drug trafficking organization ("DTO"). At the time of the search warrant, the investigation was

concluding. As such, agents had access to, and could rely upon, information obtained during the investigation including interviews of numerous cooperating individuals, confidential sources, controlled drug purchases, extensive surveillance, and Title III intercepts of telephones used by Reno and other members of the DTO. The affidavit included and relied upon information gleaned from intercepted communications between Druger and Reno, which appear to involve the sale and distribution of methamphetamines. The affidavit also described information provided from a CS indicating that one of the locations targeted in the affidavit (location #2) was a shop utilized by Reno for drug trafficking activities, but registered in Druger's name. *See* Govt. Exh. 2, at ¶60. The affidavit further described information from a second CS indicating that the CS had been in Druger's residence and, consistent with intercepted communications, the CS saw methamphetamines and several handguns in Druger's residence. The affidavit also details intercepted communications between Druger and Reno that, coupled with physical surveillance, indicated to investigators that methamphetamine was being stored, weighed, and repackaged (for distribution) at Druger's residence through mid-November 2015. *See id.* at ¶¶76-80. In sum, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, Judge Mummert had a "substantial basis for . . . concluding that probable cause existed." *Gates*, 462 U.S. at 239.

Defendant's contention that the warrant lacked probable cause because it relied upon stale information is unavailing. The Eighth Circuit has declined to draw any bright line that would require a court reviewing a probable cause determination to categorically define information obtained outside of a particular time frame as "stale." Instead, "[t]ime factors must be examined in the context of a specific case and the nature of the crime under investigation. *United States v. Formaro,* 152 F.3d 768, 771 (8th Cir. 1998) (quoting *United States v. Koelling,* 992 F.2d 817, 822 (8th Cir. 1993)). "[W]here continuing criminal activity is suspected, the passage of time is less significant." *Formaro,* 152 F.3d at 771. This is particularly true where, as in this case, "investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [do] not necessarily

make the information stale." *Id.* Given the extensive nature of the investigation here, the roughly four week interval that elapsed between the last of the wire intercepts reflected in the warrant affidavit and the date investigators applied for a warrant is not sufficient to render the information in the search warrant affidavit stale.

Defendant's contention that the CS relied upon in the search warrant was not reliable is also without merit. "When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause." *United States v. Revivich*, 793 F.2d 957, 959 (8th Cir. 1986) (citing *Gates*, 462 U.S. at 230, and *United States v. Ross*, 713 F.2d 389, 393 (8th Cir. 1983)); *see also United States v. McAtee*, 481 F.3d 1099, 1102 (8th Cir. 2007). "It is well settled that the statements of a reliable informant can provide, by themselves, a sufficient basis for the issuance of a warrant." *United States v. Pressley*, 978 F.2d 1026, 1027 (8th Cir. 1992) (citing *McCray v. Illinois*, 386 U.S. 300 (1967)).

Under Eighth Circuit precedent, there are several factors the court should consider in determining whether information is reliable. For example, "[a]n informant's tip can be sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' or if the tip 'is corroborated by independent evidence.'" *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). Reliability may be found on the basis that past tips have led to seizures of contraband or other evidence. *Formaro*, 152 F.3d at 770; (8th Cir. 1998); *Gladney*, 48 F.3d at 313; *Williams*, 10 F.3d at 594. The Eighth Circuit has also noted that "there are indicia of reliability in 'the richness and detail of a first-hand observation.'" *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quoting *United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990); *see also Gates*, 462 U.S. at 234 (finding that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight"); *Williams*, 10 F.3d at 594 (noting that source's information was timely and "based on

the informant's first-hand observations, not merely from rumor or innuendo"). Furthermore, "'[s]tatements against the penal interest of an informant typically carry considerable weight' in establishing reliability." *Buchanan,* 574 F.3d at 561-62 (quoting *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001)). "The circumstances of personal questioning may also enhance reliability and credibility." *Id.* at 562; *see also United States v. Robertson*, 39 F.3d 891, 893 (8th Cir. 1994) (stating the reliability of a tip is enhanced when a law enforcement officer meets personally with the informant to assess his credibility). Finally, "[p]robable cause can be established when information from one informant is consistent with that of a second, independent informant." *Buchanan*, 574 F.3d at 562. "Where the informant's information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the findings of probable cause." *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992).

As the factual findings demonstrate, the affidavit outlines the background of the confidential sources referenced in the affidavit; describes how the investigative team corroborated information provided by the confidential sources; and explains why the investigative team believed those sources to be reliable. The reliability of the CS was further enhanced by information indicating that the  had been in Druger's residence and, consistent with intercepted communications, saw, firsthand, that Druger had methamphetamines and several handguns in his residence. Intercepted communications between Druger and Reno coupled with physical surveillance further corroborated information from the source that methamphetamine was being stored, weighed, and repackaged for distribution at Druger's residence. In sum, the search warrant affidavit more than amply established the informant's reliability. As such, based on the totality of the circumstances presented in the search warrant affidavit, Judge Mummert had a substantial basis for concluding that probable cause for the search of Druger's residence existed.

### 2. The good faith exception applies.

Even if the search warrant affidavit somehow fell short of supplying probable cause, the good faith exception under *United States v. Leon*, 468 U.S. 897, 922 (1984), applies. *Leon* held that evidence

obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on the search warrant issued by a neutral and detached judge need not be excluded as a matter of law. *Id.* In the absence of an allegation that the issuing judge abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. *Id.* at 926.

Nothing in Druger's written submissions even hints that the agents involved in the preparation of the search warrant were dishonest in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. In addition, nothing in Druger's submissions or the evidence of record suggests that the issuing judge, Judge Mummert, abandoned his detached and neutral role. In sum, neither Druger's written submissions nor evidence adduced at the hearing provide any basis for concluding that the good faith exception does not apply in this case. Because Druger's assertions fall far short of asserting either that the issuing judge abandoned his detached and neutral role or that the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause, the good faith exception applies and suppression is inappropriate.

### B. August 17, 2016, State Search Warrant

Based on the foregoing factual findings, the undersigned concludes that the August 2016 search of Druger's residence was also lawful. As with the December 2015 warrant, the judge issuing the August 2016 had ample reasons for concluding that, based on the search warrant affidavit, probable cause for the search existed. The affidavit indicated that within the 48 hours leading up to the search warrant application, Corporal Bickell had received information from a documented Missouri State Highway Patrol Confidential Informant ("CI") that, based on the CI's firsthand observations, Druger was in possession of methamphetamine and a pistol in his residence. The affidavit describes in detail specific locations within the residence where Druger kept drugs. The affidavit also discusses the length and nature of the CI's relationship with Druger as that of drug purchaser/drug seller and discusses

Druger's involvement in the sale of methamphetamines to the CI, specifically, and in and around Mexico, Missouri, generally. The affidavit further includes a description by the CI of barricades and other measures taken by Druger to hinder entry into the residence by law enforcement. The specific and concrete descriptions by the CI described in the affidavit, coupled with statements about the CI's reliability in past investigations belies any suggestion by Druger that the affidavit failed to demonstrate the CI's reliability. In sum, based on the totality of the circumstances presented in the search warrant affidavit, the issuing judge had a substantial basis for concluding that probable cause for the August 2016 search of Druger's residence existed.

Druger's suggestion that the search warrant affidavit contained falsehoods warranting suppression lacks merit. The affidavit refers to the December 2015 federal search warrant obtained by Agent Lawyer, and states that methamphetamines and multiple firearms were seized by law enforcement at the time that federal search warrant was executed. Corporal Bickell and Agent Lawyer both acknowledged at the suppression hearing that, in fact, the federal search warrant return did not list methamphetamines or suspected methamphetamines. However, both officers credibly testified that although methamphetamines were not listed on the federal search warrant return as items seized by law enforcement, trace amounts of methamphetamines were found on items seized during execution of the December 2015 federal warrant. Corporal Bickell further explained that his statement in the affidavit regarding the prior seizure of methamphetamines was not based on his personal knowledge. Rather, he made that statement in reliance on information he received from officers involved in the execution of the federal search warrant in December 2015. In sum, the statements on which Druger's motion rests fall far short of the requisite preliminary showing of an intentionally false or recklessly made statement required under *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978) or that would preclude application of the good faith exception under *United States v. Leon*, 468 U.S. 897, 922 (1984).

Indeed, the good faith exception applies, first, because there is no evidence or suggestion that the issuing judge abandoned his detached and neutral role. Second, while Corporal Bickell's assertion that

methamphetamines were seized at the time of the December 2015 search warrant might well be characterized as an overstatement, it was certainly not a false statement. In sum, the evidence does not support a finding that the officers involved in the preparation of the search warrant were dishonest in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

For all of the foregoing reasons, Defendant's motion to suppress physical evidence should be denied.

## II.  MOTION TO SUPPRESS ELECTRONIC SURVEILLANCE EVIDENCE (DOC. 91)

Defendant Druger argues that all evidence obtained by means of the court authorized interceptions must be suppressed because the affidavits of Agent Lawyer submitted in support of the authorization failed to satisfy the necessity requirement set out in 18 U.S.C. §§2518(1)(c) & (3)(c). Other than necessity, Defendant Druger does not challenge the propriety of the court authorized interceptions.

Under §2518(1)(c), each application for a wiretap authorization must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *See United States v. Turner,* 781 F.3d 374, 382 (8th Cir. 2015) (quoting 18 U.S.C. § 2518(1)(c)). Section 2518(3)(c) similarly requires that in issuing a wiretap authorization order, the district court must determine whether "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous." *See United States v. West,* 589 F.3d 936, 939 (8th Cir. 2009) (quoting 18 U.S.C. § 2518(1)(c)). Together, these sections make up the necessity requirement for granting an order to receive wire intercepts from a phone.

It is well established that although wiretaps should not be "routinely used as the initial step in an investigation," the necessity requirement "does not require that law enforcement exhaust all possible techniques before applying for a wiretap." *Turner,* 781 F.3d at 383.  "If law enforcement officers are

able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each co-conspirator, the necessity requirement is satisfied." *Id.* at 382. Indeed, the Eighth Circuit has interpreted the necessity requirement to "restrict wiretaps to situations in which they are necessary as well as reasonable, but not to require the government to show the exhaustion of specific or all possible investigative techniques before wiretap orders could be issued." *United States v. Thompson,* 690 F.3d 977, 986 (8th Cir. 2012) (internal quotations omitted) (quoting *United States v. Daly,* 535 F.2d 434, 438 (8th Cir. 1976)). Moreover, whether the statutory requirement is met is a question of fact to be determined by the issuing judge "in a commonsense manner." *Id.*

Here, based on the foregoing factual findings, the wiretap was not used as the initial step in the investigation. The affidavit described various techniques used by law enforcement officials to gather evidence in the case. The affidavit described in great detail why some investigative techniques had failed or why they would be of no value. The affidavit explained that the use of various techniques had failed to fully reveal the full scope of the conspiracy, its complete membership and methods of operation. Agent Lawyer's testimony at the suppression hearing confirmed the facts contained in the affidavit and, in some instances, further elaborated on those points. In sum, Defendant Druger's motion to suppress electronic surveillance evidence should be denied because the facts contained in the affidavit were sufficient to meet the necessity requirement.

## CONCLUSION

For all of the foregoing reasons, Defendant Druger's motions to suppress evidence should be denied.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of May, 2017.

- 16 -